# EXHIBIT E

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
| --- |
| MAY 2016 **000492** |
| E-Filing Number: 1605008407 |

| | |
| --- | --- |
| **PLAINTIFF'S NAME**<br>DAVID DEARDEN | **DEFENDANT'S NAME**<br>FCA US LLC |
| **PLAINTIFF'S ADDRESS**<br>7904 PINE ROAD<br>WYNDMOOR PA 19038 | **DEFENDANT'S ADDRESS**<br>C/O CT CORPORATION 116 PINE STREET, NO. 320<br>HARRISBURG PA 17101 |
| **PLAINTIFF'S NAME**<br>DAVID DEARDEN | **DEFENDANT'S NAME**<br>CHRYSLER GROUP, LLC |
| **PLAINTIFF'S ADDRESS**<br>7904 PINE ROAD<br>WYNDMOOR PA 19038 | **DEFENDANT'S ADDRESS**<br>C/O CT CORPORATION 116 PINE STREET, NO. 320<br>HARRISBURG PA 17101 |
| **PLAINTIFF'S NAME**<br>VIRGINIAANNE ROSNER | **DEFENDANT'S NAME**<br>NANETTE S. BRICKNER |
| **PLAINTIFF'S ADDRESS**<br>103 RIDGE RUN ROAD<br>SELLERSVILLE PA 18960 | **DEFENDANT'S ADDRESS**<br>317 THIRD STREET<br>HANOVER PA 17331 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | |
| --- | --- | --- | --- |
| 9 | 13 | [X] Complaint<br>[ ] Writ of Summons | [ ] Petition Action [ ] Notice of Appeal<br>[ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
| --- | --- | --- | --- | --- |
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[X] Jury<br>[ ] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

| CASE TYPE AND CODE |
| --- |
| 2P - PRODUCT LIABILITY |

| STATUTORY BASIS FOR CAUSE OF ACTION |
| --- |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY**<br>MAY **04** 2016<br>**E. MASCUILLI** | IS CASE SUBJECT TO COORDINATION ORDER?<br>YES          NO |
| --- | --- | --- |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>DAVID DEARDEN , DAVID DEARDEN</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY<br>ROBERT J. MONGELUZZI | ADDRESS<br>ONE LIBERTY PLACE 52ND FLOOR<br>1650 MARKET ST.<br>PHILADELPHIA PA 19103 |
| --- | --- |
| PHONE NUMBER<br>(215)496-8282 | FAX NUMBER<br>(215)496-0999 | |
| SUPREME COURT IDENTIFICATION NO.<br>36283 | E-MAIL ADDRESS<br>VSmith@smbb.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY<br>*ROBERT MONGELUZZI* | DATE SUBMITTED<br>Wednesday, May 04, 2016, 11:51 am |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMPLETE LIST OF PLAINTIFFS:

1. DAVID DEARDEN
   7904 PINE ROAD
   WYNDMOOR PA 19038
2. DAVID DEARDEN
   7904 PINE ROAD
   WYNDMOOR PA 19038
3. VIRGINIAANNE ROSNER
   103 RIDGE RUN ROAD
   SELLERSVILLE PA 18960
4. DIEGO FRANK BURNS
   5830 WILDE POINTE DRIVE
   SARASOTA FL 34233
5. MELISSA BURNS
   5830 WILDE POINTE DRIVE
   SASASOTA FL 34233
6. MARY BURNS
   5830 WILDE POINTE DRIVE
   SARASOTA FL 34233
7. LUCY BURNS
   5830 WILDE POINTE DRIVE
   SARASOTA FL 34233
8. JOSEPH BURNS
   5830 WILDE POINTE DRIVE
   SARASOTA FL 34233
9. ALEXEI BURNS
   5830 WILDE POINTE DRIVE
   SARASOTA  FL 34233

## COMPLETE LIST OF DEFENDANTS:

1. FCA US LLC
   C/O CT CORPORATION 116 PINE STREET, NO. 320
   HARRISBURG PA 17101
2. CHRYSLER GROUP, LLC
   C/O CT CORPORATION 116 PINE STREET, NO. 320
   HARRISBURG PA 17101
3. NANETTE S. BRICKNER
   317 THIRD STREET
   HANOVER PA 17331
4. HENISE TIRE SERVICE, INC.
   558 E. PENN AVENUE
   CLEONA PA 17042
5. VINCENTE ESPINVERA
   130 JORALMON STREET
   BELLEVILLE NJ 07109
6. MARIANA SALAS
   130 JORALMON STREET
   BELLEVILLE NJ 07109
7. MS TRUCKING
   ALIAS: M. SALAS TRUCKING
   130 JORALMON STREET
   BELLEVILLE NJ 07109
8. DJM TRANSPORT, LLC
   2 FISH HOUSE ROAD 2ND FLOOR FRONT
   KEARNY NJ 07032
9. BILL ANSKIS COMPANY, INC.
   465 INDUSTRIAL PARK ROAD
   ELYSBURG PA 17824
10. TRAFFIC PLANNING & DESIGN, INC.
    2500 EAST HIGH STREET SUITE 650
    POTTSTOWN PA 19464
11. ALL STATE TRAFFIC CONTROL OF PA, INC.
    600 WESTMORELAND AVENUE
    KINGSTON PA 19440
12. ESTABLISHED TRAFFIC CONTROL, INC.
    3162 UNIONVILLE PIKE
    HATFIELD PA 19440
13. TRC COMPANIES INC.

ALIAS: TRC ENGINEERS, INC.
C/O CT CORPORATION 116 PINE STREET, NO. 320
HARRISBURG PA 17101

**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**
BY:   ROBERT J. MONGELUZZI/LARRY BENDESKY/
DAVID L. KWASS/DAVID J. LANGSAM
IDENTIFICATION NO.   36283/51026/65856/308764
52ND FLOOR
1650 MARKET STREET
PHILADELPHIA, PA  19103
(215) 496-8282

Attorneys   for   Plaintiff,
David   Dearden,   Executor
of the Estates of Edward J.
Dearden and Theresa J.
Dearden, Deceased

**FELDMAN, SHEPHERD, WOHLGELERNTER, TANNER,**
**WEINSTOCK & DODIG**
BY:   JOHN M. DODIG/JASON A. DARIA
IDENTIFICATION NO.   51092/73360
1845 WALNUT STREET
21st FLOOR
PHILADELPHIA, PA  19103
(215) 567-8300

Attorneys   for   Plaintiff,
VirginiaAnne      Rosner,
Individually      and      as
Administratrix     of    the
Estate   of   Robert   D.
Rosner, Deceased

**HANDLER, HENNING & ROSENBERG, LLP**
BY:   DAVID H. ROSENBERG/DAVID L. LUTZ
IDENTIFICATION NO.   20569/35956
1300 LINGLESTOWN ROAD
HARRISBURG, PA 17110
(717) 238-2000

Attorneys for Plaintiffs,
Diego Frank Burns,
Melissa Burns, Mary
Burns (a minor), Lucy
Burns (a minor), Joseph
Burns (a minor), Alexei
Burns (a minor)

| | |
|---|---|
| DAVID DEARDEN, as Executor of the Estate of EDWARD J. DEARDEN, Deceased<br>7904 Pine Road<br>Wyndmoor, PA 19038<br>and<br>DAVID DEARDEN, as Executor of the Estate of THERESA J. DEARDEN, Deceased<br>7904 Pine Road<br>Wyndmoor, PA 19038<br>and<br>VIRGINIAANNE ROSNER, Individually and as Administratrix of the Estate of Robert D. Rosner, Deceased<br>103 Ridge Run Road<br>Sellersville, PA 18960<br>and<br>DIEGO FRANK BURNS and MELISSA BURNS, Individually and as the Parents and Natural Guardians of MARY BURNS, a | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS<br>LAW DIVISION<br><br>TERM, 2016<br><br>No.<br><br>**JURY TRIAL DEMANDED** |

1

Case ID: 160500492

minor, LUCY BURNS, a minor, JOSEPH
BURNS, a minor, and ALEXEI BURNS, a
minor
5830 Wilde Pointe Drive
Sarasota, FL 34233

                                        Plaintiffs

                        v.

FCA US LLC
c/o CT Corporation
116 Pine Street, No. 320
Harrisburg, PA 17101
and
CHRYSLER GROUP, LLC
c/o CT Corporation
116 Pine Street, No. 320
Harrisburg, PA 17101
and
NANETTE S. BRICKNER
317 Third Street
Hanover, PA 17331
and
HENISE TIRE SERVICE, INC.
558 E. Penn Avenue
Cleona, PA 17042
and
VINCENTE ESPINVERA
130 Joralmon Street
Belleville, New Jersey 07109
and
MARIANA SALAS
130 Joralmon Street
Belleville, New Jersey 07109
and
MS Trucking a/k/a M. SALAS TRUCKING
130 Joralmon Street
Belleville, NJ 07109
and
DJM TRANSPORT, LLC
2 Fish House Road, 2nd Floor Front
Kearny, New Jersey 07032
and
BILL ANSKIS COMPANY, INC.
465 Industrial Park Road
Elysburg, PA 17824

Case ID: 160500492

and

TRAFFIC PLANNING & DESIGN, INC.
2500 East High Street, Suite 650
Pottstown, PA 19464
and

ALL STATE TRAFFIC CONTROL OF PA,
INC
600 Westmoreland Avenue
Kingston, Pennsylvania 19440
and

ESTABLISHED TRAFFIC CONTROL, INC.
3162 Unionville Pike
Hatfield, PA 19440
and

TRC COMPANIES INC., d/b/a TRC
ENGINEERS, INC.
c/o CT Corporation
116 Pine Street, No. 320
Harrisburg, PA 17101

Defendants

| "NOTICE" | "AVISO" |
|---|---|
| "You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by  entering a written appearance personally or by an attorney and filing in writing with the court your  defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may  proceed without you and a judgement may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you. | "Le han demandado en corte.  Si usted quiere defenderse contra las demandas nombradas en las páginas siguientes, tiene veinte (20) dias, a partir de recibir esta  demanda y la notificatión para entablar personalmente o por un abogado una comparecencia escrita y tambien para entablar con la corte en forma escrita sus defensas y objeciones a las demandas contra usted. Sea avisado que si usted no se defiende, el caso puede continuar sin usted y la corte puede incorporar un juicio contra usted sin previo aviso para conseguir el dinero demandado en el pleito o para conseguir culquier otra demanda o alivio solicitados por el demandante.  Usted puede perder dinero o propiedad u otros derechos importantes para usted. |
| "YOU SHOULD TAKE THIS PAPER TO YOUR  LAWYER AT ONCE.  IF YOU  DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. | USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE.  SI USTED NO TIENE ABOGADO (O NO TIENE DINERO SUFICIENTE PARA PARGAR A UN ABOGADO), VAYA EN PERSONA O LLAME  POR TELEFONO LA OFICINA NOMBRADA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASSISTENCIA LEGAL.  ESTA OFICINA PUEDE PROPORCIONARLE LA INFORMACION SOBRE CONTRATAR A UN ABOGADO. |
| THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE. | SI USTED NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO, ESTA OFICINA PUEDE PROPORCIONARLE INFORMACION SOBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES A PERSONAS QUE CUMPLEN LOS REQUISITOS PARA UN HONORARIO REDUCIDO O NINGUN HONORARIO. |
| PHILADELPHIA BAR ASSOCIATION LAWYER REFERRAL and INFORMATION SERVICE One Reading Center Philadelphia, Pennsylvania 19107 (215) 238-1701" | ASSOCIACION DE LICENCIADOS DE FILADELFIA SERVICO DE REFERENCIA E INFORMACION LEGAL One Reading Center Filadelfia, Pennsylvania 19107 Telefono: (215) 238-1701" |

3

## COMPLAINT – CIVIL ACTION

### Parties

1.      Plaintiff, David Dearden, is an adult individual, citizen and resident of the Commonwealth of Pennsylvania, residing at the above-captioned address and brings this action as Executor of the Estate of Edward J. Dearden, Deceased, pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. § 8301, and the Pennsylvania Survival Act, 42 Pa. C.S.A. § 8302.

2.      Plaintiff, David Dearden, is an adult individual, citizen and resident of the Commonwealth of Pennsylvania, residing at the above-captioned address and brings this action as Executor of the Estate of Theresa J. Dearden, Deceased, pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. § 8301, and the Pennsylvania Survival Act, 42 Pa. C.S.A. § 8302.

3.      This action has been commenced within two (2) years after the deaths of Edward J. Dearden and Theresa J. Dearden.

4.      Prior to the deaths of Edward J. Dearden and Theresa J. Dearden, no action was brought against the Defendants to recover for the carelessness, negligence, defectively designed and manufactured products and/or other liability producing conduct which resulted in the Decedents' pain, suffering and death.  A prior Wrongful Death and Survival action for the Wrongful Death of Edward J. Dearden or Theresa J. Dearden was commenced against a portion of the above-named Defendants.  This action is being filed because additional Defendants were identified after the filing of the prior action.

5.      Plaintiff, VirginiaAnne Rosner, is an adult individual, citizen and resident of the Commonwealth of Pennsylvania, residing at the above-captioned address and brings this action

4

as Administratrix of the Estate of Robert D. Rosner, Deceased, pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. § 8301, and the Pennsylvania Survival Act, 42 Pa. C.S.A. § 8302.

6.    This action has been commenced within two (2) years after the death of Robert D. Rosner.

7.    Prior to the death of Robert D. Rosner, no action was brought against the Defendants to recover for the carelessness, negligence, and/or other liability producing conduct which resulted in the Decedent's pain, suffering and death.   A prior Wrongful Death and Survival action for the Wrongful Death of Robert D. Rosner was commenced against a portion of the above-named Defendants.   This action is being filed because additional Defendants were identified after the filing of the prior action.

8.    Plaintiffs, Diego Frank Burns and Melissa Burns, are adult individuals, citizens and residents of the State of Florida, residing at the above-captioned address and bring this action individually and on behalf of their minor children, Mary Burns (DOB: 8/23/01), Lucy Burns (DOB: 9/12/01), Joseph Burns (2/6/05) and Alexei Burns (5/3/07) who also reside at the above-captioned address.

9.    Defendant FCA US, LLC is a Delaware corporation with a registered agent for service of process at the above-captioned address.   FCA US, LLC regularly conducts business within the Commonwealth of Pennsylvania, specifically in Philadelphia County, by distributing its products throughout the state and county.

10.    FCA US, LLC purposely established significant contacts in Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business activities in Pennsylvania. FCA US, LLC regularly conducts business in Philadelphia County through

Case ID: 160500492

Family Chrysler Jeep Dodge, 6735-39 Essington Avenue; Barbera's Autoland, 7810 Roosevelt Boulevard.

11.    At all relevant times, FCA US, LLC was acting by and though its employees, servants, and agents, acting within the course and scope of their employment, service and agency.

12.    Defendant Chrysler Group, LLC is a Delaware corporation with a registered agent for service of process at the above-captioned address.  Chrysler Group, LLC regularly conducts business within the Commonwealth of Pennsylvania, specifically in Philadelphia County, by distributing its products throughout the state and county.

13.    Chrysler Group, LLC purposely established significant contacts in Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business activities in Pennsylvania. Chrysler Group, LLC regularly conducts business in Philadelphia County through Family Chrysler Jeep Dodge, 6735-39 Essington Avenue; Barbera's Autoland, 7810 Roosevelt Boulevard.

14.    At all relevant times, Chrysler Group, LLC was acting by and though its employees, servants, and agents, acting within the course and scope of their employment, service and agency.

15.    Defendants, FCA US, LLC and Chrysler Group, LLC shall be collectively referred to hereinafter as "Chrysler."

16.    Defendant, Nanette S. Brickner, is an adult individual, citizen and resident of the Commonwealth of Pennsylvania, residing at 9653 Orchard Road, Spring Grove, Pennsylvania 17362.

6

17.     Defendant, Henise Tire Service, Inc. ("Henise"), is a Pennsylvania corporation and a motor vehicle repair, maintenance and inspection facility with a principal place of business at 558 E. Penn Avenue, Cleona, PA 17042.  Henise regularly conducts business within the Commonwealth of Pennsylvania, specifically in Philadelphia County, by distributing its products and services throughout the state and county.

18.     Henise purposely established significant contacts in Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business activities in Pennsylvania and Philadelphia County.

19.     At all relevant times, Henise was acting by and through its employees, servants, and agents, acting within the course and scope of their employment, service and agency.

20.     Defendant, Vincente Espinvera, is an adult individual, citizen and resident of the State of New Jersey, residing at 130 Joralmon Street, Belleville, New Jersey 07109.

21.     Defendant, Mariana Salas, is an adult individual, citizen and resident of the State of New Jersey, residing at 130 Joralmon Street, Belleville, New Jersey 07109.

22.     Defendant, MS Trucking a/k/a M. Salas Trucking ("MS Trucking"), is a corporate and/or other business entity, organized, operating and existing under the laws of the State of New Jersey with a registered office address and principal place of business located at 130 Joralmon Street, Belleville, New Jersey 07109.  MS Trucking regularly conducts business within the Commonwealth of Pennsylvania, specifically in Philadelphia County, by distributing its products and services throughout the state and county.

23.     MS Trucking purposely established significant contacts in Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business activities in Pennsylvania and Philadelphia County.

Case ID: 160500492

24.     At all relevant times, MS Trucking was acting by and through its employees, servants, and agents, acting within the course and scope of their employment, service and agency.

25.     At all relevant times hereto, Defendant Salas was the owner of MS Trucking.

26.     Defendant, DJM Transport, LLC ("DJM Transport"), is a corporate and/or other business entity, organized, operating and existing under the laws of the State of New Jersey with a registered office address and principal place of business located at 2 Fish House Road, 2nd Floor Front, Kearny, New Jersey 07032.  DJM Transport regularly conducts business within the Commonwealth of Pennsylvania, specifically in Philadelphia County, by providing its services throughout the state and county.

27.     DJM Transport purposely established significant contacts in Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business activities in Pennsylvania and Philadelphia County.

28.     At all relevant times, DJM Transport was acting by and though its employees, servants, and agents, acting within the course and scope of their employment, service and agency.

29.     At all times relevant hereto, Defendant Espinvera was an employee and actual or apparent agent of Defendants, Mariana Salas, MS Trucking a/k/a M. Salas Trucking, and DJM Transport, and was acting in the course and scope of his employment and agency with those Defendants.

30.     Defendant, Bill Anskis Company, Inc., is a corporate and/or other business entity, organized, operating and existing under the laws of the Commonwealth of Pennsylvania with a registered address of 304 E. Race Street, Shamokin, Pennsylvania 17872, and a principal place of

8

business located at 465-467 Industrial Park Road, Elysburg, Pennsylvania 17824.  At all relevant times, Defendant regularly conducted and continues to regularly conduct business in Philadelphia County and the Commonwealth of Pennsylvania.

31.     Defendant, Traffic Planning & Design, Inc., is a corporate and/or other business entity, organized, operating, and existing under the laws of the Commonwealth of Pennsylvania with a registered address and principal place of business located at 2500 East High Street, Suite 650, Pottstown, Pennsylvania 19464.  At all relevant times, Defendant regularly conducted and continues to regularly conduct business in Philadelphia County and the Commonwealth of Pennsylvania.

32.     Defendant, All State Traffic Control of PA, Inc., is a corporate and/or other business entity, organized, operating, and existing under the laws of the Commonwealth of Pennsylvania with a registered address of 351 Main Street, Suite 13, Kingston, Pennsylvania 18704, and a principal place of business located at 600 Westmoreland Avenue, Kingston, Pennsylvania 18704.  At all relevant times, Defendant regularly conducted and continues to regularly conduct business in Philadelphia County and the Commonwealth of Pennsylvania.

33.     Defendant, Established Traffic Control, Inc., is a corporate and/or other business entity, organized, operating, and existing under the laws of the Commonwealth of Pennsylvania with a registered address of 16 Marian Circle, Chalfont, Pennsylvania 18914, and a principal place of business located at 3162 Unionville Pike, Hatfield, PA 19440.  At all relevant times, Defendant regularly conducted and continues to regularly conduct business in Philadelphia County and the Commonwealth of Pennsylvania.

34.     Defendant, TRC Companies, Inc., d/b/a TRC Engineers, Inc., is a corporate and/or other business entity, operating under the laws of the Commonwealth of Pennsylvania,

9

with a registered address for service of process as CT Corporation, 116 Pine Street, No. 320, Harrisburg, Pennsylvania 17101; and its principal place of business located at 21 Griffin Road North, Windsor, Connecticut 06095.  At all relevant times, Defendant regularly conducted and continues to regularly conduct business in Philadelphia County and the Commonwealth of Pennsylvania.  Defendant has nine (9) office locations in the Commonwealth of Pennsylvania including an office at 1601 Market Street, Suite 2555, Philadelphia, Pennsylvania 19103.

35.     At all relevant times, all Defendants owed, undertook and/or assumed the duty to use reasonable, proper, adequate, and appropriate care and measures to avoid harm to foreseeable third parties, such as Plaintiffs and their Decedents, which duties were breached by Defendants as set forth below.

36.     At all times relevant hereto, all Defendants acted individually and/or by and through their duly authorized actual and/or apparent agents, servants, workmen and/or employees, acting within the scope and course of their employment and/or agency with Defendants.

### Jurisdiction

37.     Jurisdiction is proper in the Commonwealth of Pennsylvania under 42 Pa.C.S.A. §5301(a)(1) & (2) since all Defendants continuously and systematically conduct business in Pennsylvania; many Defendants are incorporated in Pennsylvania and maintain their principal place of business in Pennsylvania; as well as 42 Pa. C.S.A. § 5322(a), since all Defendants transact business in the Commonwealth of Pennsylvania, contract to supply services in Pennsylvania, have an interest in, use or possess real property in Pennsylvania, and caused harm and tortious injury in Pennsylvania.

### Venue

10

38.     Venue is proper in Philadelphia County under Pa.R.C.P. 1006(b), and 2179(a)(2), since one or more of the Defendants regularly conduct business and continue to regularly conduct business in Philadelphia County.  Venue is, therefore, proper as to all Defendants under Pa. R.C.P. 1006 (c)(1).

### Incident

39.     On May 12, 2014 at or about 1:10 p.m., Defendant Espinvera was driving a 2000 Peterbilt tractor, towing an empty Mac-Lander semi-trailer eastbound on I-78 in the left lane.

40.     Traffic in the area of mile marker 41.5 was either stopped or slow moving due to road work being performed on a bridge in the area of mile marker 44.

41.     Defendant Espinvera was driving too fast for conditions and failed to observe or perceive the slow moving/stopped traffic in a timely manner.

42.     At or about the same time and place, Robert Rosner was stopped in a 2012 Chevrolet Malibu ("Rosner vehicle"), in the area of mile marker 41.5 eastbound on I-78 in Greenwich Township, Berks County, Pennsylvania.

43.     At or about the same time and place, Diego Frank Burns (driver), Melissa Burns (front passenger), Mary Burns (rear passenger), Lucy Burns (rear passenger), Joseph Burns (rear passenger) and Alexei Burns (rear passenger) were stopped in a 2008 Dodge Caravan ("Burns vehicle").

44.     At or about the same time and place, Edward J. Dearden (driver) and Theresa J. Dearden (front passenger) were stopped in a 1995 Jeep Grand Cherokee, vehicle identification number 1J4GZ78SXSC546206 ("Dearden vehicle").

45.     All passengers in the Rosner, Dearden and Burns vehicles were wearing lap and shoulder safety belts.

11

Case ID: 160500492

46.     As a result of his driving too fast for the conditions and his failure to observe or perceive the slow moving/stopped traffic, Defendant Espinvera caused the front of his tractor-trailer to strike the rear of the Rosner vehicle.

47.     As a result of the initial impact with Defendant Espinerva's tractor, the Rosner vehicle became "locked" to the front of the tractor and was pushed eastbound. Once at final rest and seeing Mr. Rosner's vehicle on fire, Defendant Espinvera attempted to back his tractor-trailer away from the fire. In doing so, he dragged Mr. Rosner's vehicle with him. Defendant Espinvera backed up approximately 90 feet coming to a final rest with the tractor on the north (inside) shoulder facing east and the trailer "jack-knifed" across both eastbound lanes.

48.     As a result of the violent impact, Robert Rosner suffered injuries including laceration of the liver, fracture of the posterior ribs on the left side with hemorrhage, fracture of the distal right femur with hemorrhage, intracerebral petechial, larger hemorrhages and streak hemorrhages of the cerebral hemispheres and brainstem, focal acute subarachnoid hemorrhage of the cerebral hemispheres, and extensive destruction of the body with loss of skin and soft tissues, skeletal muscle, portions of the right and left upper and lower extremities and joints, loss of bone, perforation of the head and trunk, emotional distress, embarrassment and humiliation, loss of life's pleasures, disfigurement, loss of income, loss of earning capacity, assumption of medical expenses and other injuries.

49.     On May 12, 2014, Robert Rosner was pronounced dead by the Berks County Coroner. According to the Certificate of Death, the immediate cause of death was listed as blunt force trauma and thermal trauma.

50.     As a result of the rear-end impact, the Rosner vehicle was pushed forward and impacted the rear of the Burns vehicle.

Case ID: 160500492

51.     As a result of the violent impact, Diego Frank Burns suffered injuries including Left rib fractures (5-7), Anterior Maxilla/Nasal Septum Fracture, Facial Contusion, Left Hemopneumothorax, Abdominal Contusion, Bilateral Pulmonary Embolisms, Left Ear Hematoma/Laceration, Right Knee Hematoma and Torn Meniscus, Medial/Lateral Meniscus, Left Eye Posterior Vitreous Detachment/Purtscher's Retinopathy, Low back pain, Left Ankle/Foot Pain, Abnormal Cortisol and Hormone Levels/Adrenal Fatigue/Hashimoto's Thyroditis, Sudden Onset Hypertension, Sprain of Left Hand and Pain in Left Palm, Left Jaw Problems; Melissa Burns suffered injuries including L2 Compression Fracture with Anterior Wedging, Concussion with Loss of Consciousness, Abdominopelvic and Lumbar Contusions, Chest Contusions, Urinary Retention, Left Toe Great Fracture/Foot Injury; Mary Burns suffered injuries including Right Shoulder and Left Hip Abrasions and Multiple Abrasions; Lucy Burns suffered injuries including Acute Back Pain/Lumbar Strain, Minor Closed Head Injury and Multiple Superficial Abrasions to the Abdomen, Right Elbow and Left Elbow; Joseph Burns suffered injuries including Acute Anterior, Transient, Mild Epistaxis, Minor Closed Head Injury, Multiple Superficial Abrasions to the Face and Right Upper Arm, Sprained Right Ankle; Alexei Burns suffered injuries including Abrasions.

52.     As result of the accident, Diego Frank Burns, Melissa Burns, Mary Burns, Lucy Burns, Joseph Burns and Alexei Burns suffered emotional distress, embarrassment and humiliation, loss of life's pleasures, disfigurement, loss of income, loss of earning capacity, assumption of medical expenses and other injuries.

53.     As a result of the rear-end impact, the Burns vehicle was pushed forward and impacted the rear of the Dearden vehicle.

13

54.    As a result of the rear-end impact, the Dearden vehicle immediately became engulfed in flames.

55.    As a result of the post-accident fire, Edward J. Dearden and Theresa J. Dearden suffered death, severe burn injuries, inhalation injuries, emotional distress, embarrassment and humiliation, loss of life's pleasures, disfigurement, loss of income, loss of earning capacity, assumption of medical expenses and other injuries.

56.    Edward J. Dearden and Theresa J. Dearden were pronounced dead at the scene of the accident.

57.    According to the Police Crash Report, the accident occurred during the daylight hours. The roadway was dry and there were no adverse conditions.

58.    Neither Plaintiffs nor Plaintiffs' Decedents caused or contributed to this accident or their respective injuries.

59.    As a result of Defendants' conduct, as more fully discussed below, Plaintiffs and Plaintiffs' Decedents were caused to sustain the devastating injuries set forth above.

### Additional Facts – Dearden Vehicle

60.    At some time before May 12, 2014, Chrysler put the Dearden vehicle into the stream of commerce.

61.    At some time before May 12, 2014, Nanette S. Brickner sold the Dearden vehicle to Edward J. Dearden and Theresa J. Dearden.

62.    At some time before May 12, 2014, Henise performed a Pennsylvania state safety inspection and determined that the Dearden vehicle satisfactorily passed the inspection requirements.

Case ID: 160500492

63.     At some time before May 12, 2014, Henise performed inspection, repair and/or maintenance work on the Dearden vehicle.

64.     At some time before May 12, 2014, Chrysler issued a product and/or component part recall relating to the Dearden vehicle.

65.     Chrysler did not provide notice of the recall to Edward J. Dearden and/or Theresa J. Dearden before May 12, 2014.

66.     Nanette S. Brickner did not provide notice of the recall to Edward J. Dearden and/or Theresa J. Dearden before May 12, 2014.

67.     The Dearden vehicle was not crashworthy due to its propensity to burst into flames after rear impacts.

**Additional Facts – Trucking Defendants**

68.     The 2000 Peterbilt truck operated by Defendant Espinvera was owned by Defendant, MS Trucking a/k/a M. Salas Trucking.  The doors on the truck were labeled with "MS Trucking."

69.     Defendant, MS Trucking a/k/a M. Salas Trucking, is operated under the U.S. Department of Transportation Identification Number 947205.

70.     The truck was leased to DJM.

71.     The trailer pulled by Defendant Espinvera, New Jersey License No. TGP41B, was owned, operated, controlled, managed, inspected, and maintained by Defendant DJM.

72.     Defendant DJM operated under the U.S. Department of Transportation Identification Number 1625331.  This D.O.T. number was also posted on the side of the truck.

73.     Defendant DJM also operated under Motor Carrier Number 664857.

74.     According to information available from the Federal Motor Carrier Safety

15

Administration, Defendant DJM had an out-of-service percentage for vehicles and drivers that was higher than the national average.

75.     Defendant Espinvera was involved in six (6) prior reportable collisions and one (1) non-reportable collision, including one on Route 78 at or about Mile Marker 57.9.

76.     On May 11, 2014, Defendant Espinvera was in the State of Arizona.  On May 12, 2014, the day of the accident, he landed at the airport in Newark, New Jersey at 5:54 a.m.  He then went on duty at 7:00 a.m. in Garfield, New Jersey and began driving at 7:15 a.m.

### Additional Facts – Construction Defendants

77.     On the day of the accident, May 12, 2014, Eastbound traffic was stopped in both lanes due to a PennDOT construction project, according to the Police Crash Report.  According to the State Police, the collision occurred in the left eastbound lane where a backlog had formed due to a construction zone project.

78.     The roadway construction project consisted of bridge repairs of various structure types, including but not limited to structural steel repairs, concrete deck repairs, concrete beam and substructure repairs, bearing repairs, joint repairs/joint sealing, and scour countermeasures, along with miscellaneous construction for various state routes, in various municipalities, in Lehigh and Northampton County.

79.     Defendant, Bill Anskis Company, Inc., was retained as the prime contractor on the bridge repair project.

80.     One of the explicit requirements of the Contract for the bridge repair project was the maintenance and protection of traffic during construction.  Among other things, the Contract required "constant surveillance of traffic control operations".     **Exhibit A – ECMS Highway Construction Contract No. 91942** at pages 87-94.

16

81.    Defendant, Traffic Planning & Design, Inc., was retained to prepare traffic control plans.

82.    Defendants, All State Traffic Control of PA, Inc. and Established Traffic Control, Inc., had specific responsibilities for maintenance and protection of traffic during construction, including installing traffic control devices.

83.    Defendant, TRC Companies, Inc., d/b/a TRC Engineers, Inc., was retained to perform construction inspection services.

84.    On May 12, 2014, Defendant, Bill Anskis Company, Inc., had its employees, including a foreman, carpenter, and laborers, on site performing construction including sealing and caulking deck joint(s).

85.    On and before May, 12, 2014, Defendants, Bill Anskis Company, Inc., Traffic Planning & Design, Inc., All State Traffic Control of PA, Inc., Established Traffic Control, Inc., and TRC Companies, Inc., d/b/a TRC Engineers, Inc., failed to meet their obligations and responsibilities for the maintenance and protection of traffic, as set forth more specifically below.

## COUNT ONE – NEGLIGENCE
### DAVID DEARDEN, AS EXECUTOR OF THE ESTATES OF EDWARD J. DEARDEN, DECEASED, AND THERESA J. DEARDEN, DECEASED v. CHRYSLER

86.    Plaintiff incorporates by reference all preceding paragraphs, as though fully set forth here.

87.    The fuel tank location on the 1995 Jeep Grand Cherokee was approximately eleven (11) inches inboard from the rear of the vehicle.

17

88.     At the time that Chrysler designed and manufactured the 1995 Jeep Grand Cherokee it knew that locating the fuel tank rearward of the rear axle made the vehicle susceptible to post-collision fuel-fed-fires.

89.     Starting in the 1970s, vehicle manufacturers increasingly moved fuel tanks from behind the rear axle to other locations in response to the outbreak of post-collision fires associated with Ford Pinto rear-end crashes.

90.     Only a small fraction of vehicles on the market during the 1990s and 2000s were equipped with fuel tanks located rearward of the rear axle.

91.     In fact, during that time, Chrysler promoted vehicles with gas tanks in the middle of the chassis as offering extra fuel tank protection in the event of side or rear impacts.

92.     The injuries sustained by Edward J. Dearden and Theresa J. Dearden were proximately caused by the negligence of Chrysler in the following particular respects:

    a.    failing to design and/or utilize proper designs or procedures for the manufacture, assembly, sale, and distribution of the car so as to minimize the risk of post-collision fire;

    b.    designing, manufacturing, assembling, selling, and distributing a car that was not crashworthy;

    c.    failing to properly test the component parts of the car after its manufacture and prior to sale;

    d.    failing to include proper instructions for completing the assembly of the car after its manufacture and prior to sale;

    e.    failing to direct and require finishing manufactures/assemblers to adhere to applicable safety regulations and standards;

    f.    failing to direct and require finishing manufacturers/assemblers to complete/fit-out the car so as to minimize the risk of post-impact fire;

    g.    failing to adequately inform and warn purchasers and ultimate users of the car as to the proper procedures for maintaining the car;

18

h.  failing to adequately inform or warn purchasers or ultimate users of the car as to the proper procedures for repairing the car;

i.  failing to adequately inform or warn purchasers or ultimate users of the car that the car was not crashworthy;

j.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

k.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to the user;

l.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable or safe for its intended and represented purpose;

m.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all necessary safety features to protect users of said product;

n.  designing, assembling manufacturing, selling, supplying and distributing a product which could be designed more safely;

o.  designing, assembling, manufacturing, selling, supplying and distributing a product without appropriate safety devices;

p.  designing, assembling, manufacturing, selling, supplying and distributing a car with a defective fuel system;

q.  failing to incorporate safeguards that would have prevented against the risk of post–collision fire;

r.  designing, manufacturing, assembling, selling, and/or supplying the car without incorporating therein the state of the art of the industry and the state of the art in the science and engineering of fuel systems;

s.  violating applicable federal, state, local and/or industry standards;

t.  failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances;

u.  failing to recall and/or retrofit the car with an adequately designed fuel system;

v.  failing to issue an adequate recall; and

Case ID: 160500492

w.      failing to provide proper notice of the recall once issued.

93.     As a result of Defendant's negligence, Edward J. Dearden and Theresa J. Dearden were caused to sustain devastating and catastrophic injuries, resulting in their deaths, as set forth in the paragraphs above.

WHEREFORE, Plaintiff demands judgment in her favor and against Chrysler in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

## COUNT TWO – STRICT PRODUCT LIABILITY
### DAVID DEARDEN, AS EXECUTOR OF THE ESTATES OF EDWARD J. DEARDEN, DECEASED, AND THERESA J. DEARDEN, DECEASED v. CHRYSLER

94.     Plaintiff incorporates by reference all preceding paragraphs, as though fully set forth here.

95.     Chrysler is in the regular business of designing, assembling, manufacturing, distributing, selling and/or supplying cars such as the Dearden vehicle operated by Edward Dearden.

96.     Defendant Chrysler marketed and/or placed the Dearden vehicle involved in Mr. and Mrs. Dearden's accident into the general stream of commerce.

97.     The Dearden vehicle was distributed, sold and/or supplied by Chrysler in a defective condition because of its unsafe and improper construction and design.

98.     The Dearden vehicle was expected to and did reach end users, including Mr. and Mrs. Dearden, without substantial change in the condition in which it was designed, assembled, manufactured, distributed, sold and/or supplied by Chrysler.

Case ID: 160500492

99. At all relevant times, the Dearden vehicle was used and employed for the purpose for which it was designed and manufactured, and was used in a foreseeable manner.

100. The Dearden vehicle's defective condition was a cause of the injuries which Mr. and Mrs. Dearden sustained.

101. The Dearden vehicle was in a defective condition as: (1) the danger was unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the Dearden vehicle outweigh the burden or costs of taking precautions.

102. By reason of Chrysler's failure to conform to their obligations and duties under § 402A of the Restatement (Second) of Torts, Edward J. Dearden and Theresa Dearden were caused to sustain devastating and catastrophic injuries and severe emotional distress resulting in their deaths, as set forth in the paragraphs above.

103. Chrysler is strictly liable to Plaintiff for the injuries and damages suffered.

WHEREFORE, Plaintiff demands judgment in his favor and against Chrysler in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

## COUNT THREE – PUNITIVE DAMAGES
### DAVID DEARDEN, AS EXECUTOR OF THE ESTATES OF EDWARD J. DEARDEN, DECEASED, AND THERESA J. DEARDEN, DECEASED v. CHRYSLER

104. Plaintiff incorporates by reference all preceding paragraphs, as though fully set forth here.

105. In 2009, the National Highway Traffic Safety Administration ("NHTSA") began to investigate fires in Jeep sport-utility vehicles.

21

Case ID: 160500492

106.    The NHTSA probe involved the Jeep Grand Cherokee, model years 1993-1998 and the Jeep Liberty, model years 2002-2007.

107.    At issue were 2.7 million Jeep Grand Cherokees and Jeep Liberties in which Chrysler designed the fuel system so that the fuel tank was positioned rearward of the rear axle, where the tank is more prone to puncture in a rear impact, often leading to a post-collision fire.

108.    The NHTSA probe linked at least fifty-six (56) deaths to Jeep fuel tanks that ignited in rear-end crashes.

109.    While Chrysler has changed the location of the fuel tanks in newer Jeep Grand Cherokees, it has not done so because of the fatality-causing crashes.

110.    Chrysler insisted during the course of the NHTSA probe that the 1993-1998 Jeep Grand Cherokees were not defective.

111.    From 2009 to 2013, Chrysler engaged in legal battles, advertising campaigns and lobbying efforts all designed to delay or forestall a product recall.  During that time, the death toll from fires erupting after rear end collisions to 1993-1998 Jeep Grand Cherokees continued to climb.

112.    In 2013, Chrysler reached an agreement to issue a recall relating to the 1993-1998 Jeep Grand Cherokee.

113.    1.6 million Jeep vehicles were subject to the recall.

114.    The Dearden Vehicle was part of the recall.

115.    The recall involved notification to vehicle owners and the installation of a trailer hitch assembly which was intended to add protection to the fuel tank in rear-end collisions.

116.    Chrysler initiated the recall (#N45) on or around August 6, 2013.

22

117.   Chrysler was required to notify owners of affected vehicles about the recall within 60 days.

118.   Chrysler did not notify Mr. or Mrs. Dearden about the recall before the May 12, 2014 accident.

119.   It was not until April 10, 2015 that Chrysler first notified the Deardens (through their son Jacob) about the recall.

120.   On April 10, 2015, Chrysler left for Jacob Dearden a voicemail advising him of the fuel tank defect and requesting that he being the vehicle to his local dealer so that the hitch assembly could be installed.

121.   As of April 2015, Chrysler had repaired four percent (4%) of the affected Jeep Grand Cherokee vehicles.

122.   Chrysler has admitted that its recall effort has not met expectations.  Vlasic, B., "*Concerns on Jeep Safety Remain, Despite Recall*," The New York Times, April 26, 2015 (citing Fiat Chrysler April 13, 2015 letter to dealers).

123.   The deadly and outrageous delay in issuing the recall and completing the vehicle repairs is because of Chrysler's active opposition to the recall effort.

124.   Despite the recall, Chrysler still publically maintains that the affected Jeep Grand Cherokees are safe to drive and do not pose an unreasonable safety risk.  Vlasic, B., "*Concerns on Jeep Safety Remain, Despite Recall*," The New York Times, April 26, 2015 (citing Fiat Chrysler Spokesman, Eric Mayne).

125.   Before this recall, Chrysler had actual knowledge that the 1993-1998 Jeep Grand Cherokee fuel tank location made the vehicle susceptible to post-collision fuel-fed-fires, and that dozens of people had burned in fires resulting from rear impacts to that vehicle.

23

126.    Chrysler chose, however, to consciously disregard this known hazard by delaying the recall.  Chrysler's conduct is outrageous and in reckless disregard of the safety and well-being of Mr. and Mrs. Dearden, as well as thousands of others who still drive these vehicles.

127.    Because it consciously disregarded this known hazard by failing to provide timely notice to the Deardens after issuing the recall, Chrysler's conduct is outrageous and in reckless disregard of the safety and well-being of Mr. and Mrs. Dearden.

128.    Chrysler's choices, in delaying the recall and then delaying the recall's implementations, were outrageous and performed willfully, wantonly and with complete disregard to Mr. and Mrs. Dearden's rights and well-being, and with a reckless indifference to the rights and well-being of others.

129.    Chrysler, by and through its agents, ostensible agents and employees intentionally, outrageously and with reckless indifference and/or disregard for Mr. and Mrs. Dearden's rights and well-being, created, maintained, and failed to alleviate the dangerous conditions that killed them and persons in their position.

130.    Before this recall, Chrysler, through its agents, ostensible agents and employees, knew or should have known that its product, and its conduct and lack thereof as described above created a high degree of risk of physical harm to Mr. and Mrs. Dearden.

131.    Despite this knowledge, Chrysler, through its agents, ostensible agents and employees, proceeded to act in reckless disregard of and indifference to the high risk of physical harm to Mr. and Mrs. Dearden.

132.    Chrysler, through its agents, ostensible agents and employees, has intentionally acted in an unreasonable character, in disregard of the high risk known to them, and so obvious

24

that they must have been taken to have been aware of them, and so great as to make it highly probable that harm to Mr. and Mrs. Dearden would follow.

133. As a direct and proximate result of Chrysler's aforesaid punitive conduct, Edward J. Dearden and Theresa J. Dearden burned to death in a post-collision fuel-fed-fire involving their 1995 Jeep Grand Cherokee on May 12, 2014.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant Chrysler in an amount in excess of Fifty Thousand Dollars ($50,000.00) in punitive damages, compensatory damages, delay damages pursuant to Pa.R.C.P. 238, interest and allowable costs of suit and brings this action to recover same.

## COUNT FOUR – NEGLIGENCE
### DAVID DEARDEN, AS EXECUTOR OF THE ESTATES OF EDWARD J. DEARDEN, DECEASED, AND THERESA J. DEARDEN, DECEASED v. NANETTE S. BRICKNER

134. Plaintiff incorporates by reference all preceding paragraphs, as though fully set forth here.

135. Nanette S. Brickner sold the Dearden vehicle to Edward J. Dearden and Theresa Dearden on or about March 7, 2012.

136. The injuries sustained by Edward J. Dearden and Theresa J. Dearden were proximately caused by the negligence of Nanette S. Brickner in the following particular respects:

    a.    failing to adequately inform or warn purchasers or ultimate users of the car that the car was not crashworthy;

    b.    failing to adequately inform or warn purchasers or ultimate users of the car that the car lacked all necessary safety features to protect users of said product;

    c.    failing to adequately inform or warn purchasers or ultimate users of the car that the car lacked appropriate safety devices;

    d.    failing to adequately inform or warn purchasers or ultimate users of the car that the car had a defective fuel system;

Case ID: 160500492

e.   failing to provide Chrysler with the contact information for the new owner of the Dearden vehicle; and

f.   failing to provide proper notice of the recall once issued.

137.   As a result of Defendant's negligence, Edward J. Dearden and Theresa J. Dearden were caused to sustain devastating and catastrophic injuries, resulting in their deaths, as set forth in the paragraphs above.

WHEREFORE, Plaintiff demands judgment in his favor and against Nanette S. Brickner in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

### COUNT FIVE – NEGLIGENCE
### DAVID DEARDEN, AS EXECUTOR OF THE ESTATES OF EDWARD J. DEARDEN, DECEASED, AND THERESA J. DEARDEN, DECEASED v. HENISE

138.   Plaintiff incorporates by reference all preceding paragraphs, as though fully set forth here.

139.   Henise, as the maintenance, service and repair providers of the Dearden vehicle, were responsible to maintain the vehicle in good operating condition in accordance with the manufacturer's specifications, and without unauthorized modification.

140.   Henise, as the authorized entity which inspected the Dearden vehicle, was responsible to ensure that the vehicle was in safe operating condition in accordance with Pennsylvania Department of Transportation specifications and regulations.

141.   The injuries sustained by Edward J. Dearden and Theresa J. Dearden were proximately caused by the negligence and carelessness of Henise in the following particular respects:

26

Case ID: 160500492

a. failing to adequately inform and warn users of the Dearden vehicle that the Dearden vehicle was not crashworthy;

b. failing to adequately inform and warn users of the Dearden vehicle that the Dearden vehicle was prone to post-collision fires;

c. releasing and supplying a product with a defective fuel system;

c. failing to ensure that the Dearden vehicle was maintained for safe operation;

d. failing to prevent a Dearden vehicle failure on a highway;

e. failing to prevent a post-collision fire which resulted in injuries and death;

f. releasing and supplying the Dearden vehicle in a defective condition;

g. releasing and supplying a product that was unreasonably dangerous to the user;

h. releasing and supplying a product which was not reasonably fit, suitable or safe for its intended and represented purpose;

i. releasing and supplying a product which lacked all necessary safety features to protect users of said product;

j. releasing and supplying a product which could be designed more safely;

k. releasing and supplying a product without appropriate safety devices;

l. violating principles of sound engineering with due regard for the fact that persons would be traveling in their cars at highway speeds;

m. failing to adequately and properly test the Dearden vehicle after maintaining, servicing, repairing and inspecting the Dearden vehicle under reasonably foreseeable circumstances;

n. failing to maintain, service, repair and inspect the Dearden vehicle in a manner which rendered it safe for travel at highway speeds.

142. As a result of Defendant's negligence, Edward J. Dearden and Theresa J. Dearden were caused to sustain devastating and catastrophic injuries, resulting in their deaths, as set forth in the paragraphs above.

Case ID: 160500492

WHEREFORE, Plaintiff demands judgment in his favor and against Henise in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

## COUNT SIX – NEGLIGENCE (DIRECT AND VICARIOUS LIABILITY)
## ALL PLAINTIFFS v. VINCENTE ESPINVERA, MARIANA SALAS, MS TRUCKING
## a/k/a M. SALAS TRUCKING, AND DJM TRANSPORT, LLC.

143.   All Plaintiffs incorporate by reference all preceding paragraphs, as though fully set forth here.

144.   The incident, injuries, death and damages described herein were caused by the carelessness, negligence, and negligence per se of Defendant Espinvera, in the following particular respects:

a.   Failing to operate the vehicle with due care and with due regard for the safety of others;

b.   Failing to maintain a proper and adequate look out;

c.   Failing to operate the vehicle with due care and due regard for road conditions;

d.   Failing to operate the vehicle at a safe and reasonable speed;

e.   Operating the vehicle at a speed in excess of the posted speed limit;

f.   Operating at a high rate of speed under the circumstances;

g.   Failing to properly observe and react to conditions existing at the time of the incident;

h.   Failing to brake and timely stop the vehicle;

i.   Failing to take other avoidance measures;

j.   Failing to remain alert and attentive;

k.   Driving at a speed in excess of the maximum limit, in violation of 75 Pa. C.S.A. § 3362(a);

Case ID: 160500492

l.   Failing to drive at a reasonable and prudent speed under the conditions, in violation of 75 Pa. C.S.A. § 3361;

m.   Failing to have regard for the actual and potential hazards that existed, in violation of 75 Pa. C.S.A. § 3361;

n.   Operating the vehicle at a speed greater than would permit him to bring his vehicle to a stop within the assured clear distance ahead, in violation of 75 Pa. C.S.A. § 3361;

o.   Failing to drive at a safe and appropriate speed when approaching a construction zone, in violation of 5 Pa. C.S.A. § 3361;

p.   Driving in careless disregard for the safety of persons, in violation of 75 Pa.C.S.A. § 3714(a);

q.   Failing to comply with traffic control devices, in violation of 75 Pa. C.S.A. §3111(a);

r.   Driving while fatigued, in violation of 75 Pa. C.S.A. § 4107(b)(2); 67 Pa. Code § 229.6; and 49 CFR § 392.3;

s.   Failing to comply with Hours of Service requirements under the Federal Motor Carrier Safety regulations;

t.   Violating the acts of the General Assembly of the Commonwealth of Pennsylvania concerning the operation of vehicles, including the Pennsylvania Motor Vehicle Code; and

u.   Violating and failing to adhere to applicable statutes, ordinances, rules, regulations and standards governing or relating to the operation of vehicles.

145.   Defendants, Mariana Salas, MS Trucking a/k/a M. Salas Trucking, and DJM Transport, LLC, are vicariously liable for the negligence of Defendant Espinvera as set forth above.

146.   The foregoing carelessness, negligence, and liability of Defendants, Espinvera, Salas, MS Trucking, a/k/a M. Sales Trucking, and DJM Transport, LLC, and each of them, increased the risk of harm, injuries, death and damages described herein, and were a substantial contributing factor in causing those injuries and damages.

Case ID: 160500492

WHEREFORE, all Plaintiffs demand judgment in their favor and against Defendants Espinvera, Salas, MS Trucking, a/k/a M. Sales Trucking, and DJM Transport, LLC in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

## COUNT SEVEN – NEGLIGENCE (DIRECT LIABILITY)
## ALL PLAINTIFFS v. MARIANA SALAS, MS TRUCKING a/k/a M. SALAS TRUCKING, AND DJM TRANSPORT, LLC.

147.    All Plaintiffs incorporate by reference all preceding paragraphs, as though fully set forth here.

148.    The incident, injuries, death and damages described herein were caused by the carelessness and negligence of Defendants, Mariana Salas, MS Trucking a/k/a M. Salas Trucking, and DJM Transport, individually, jointly and/or severally, by and/or through their agents, workmen, servants and/or employees, both generally and in the following particular respects:

    a.   Failing to investigate Defendant, Vincente Espinvera;

    b.   Failing to hire safe and competent drivers;

    c.   Hiring and/or otherwise retaining Defendant, Vincente Espinvera, as a driver;

    d.   Failing to ensure that competent, qualified, safe, and experienced drivers were hired;

    e.   Failing to ensure that only competent, qualified, safe and experienced drivers were retained;

    f.   Failing to ensure the training of Vincente Espinvera;

30

Case ID: 160500492

g.  Failing to hire a qualified and experienced driver;

h.  Negligently and improperly hiring Vincente Espinvera;

i.  Hiring an inexperienced driver;

j.  Negligently and improperly retaining Vincente Espinvera;

k.  Failing to properly train and supervise Vincente Espinvera;

l.  Failing to monitor Vicente Espinvera's Hours of Service;

m.  Allowing Mr. Espinvera to drive in violation of the Hours of Service requirements;

n.  Allowing Mr. Espinvera to drive while fatigued;

o.  Allowing Mr. Espinvera to continue to operate a commercial motor vehicle when Defendants knew and should have known he had seven (7) prior collisions, including six (6) reportable collisions;

p.  Retaining and continuing to use DJM Transport which had an out of service percentage for drivers and vehicles higher than the National average;

q.  Failing to comply with applicable standards and recommended practices issued by the National Highway Traffic Safety Administration, U.S. Department of Transportation, Federal Motor Carrier Safety Regulations, the Vehicle Equipment Safety Commission, the American National Standards Institute, the Society of Automotive Engineers and other generally recognized standards in violation of 75 Pa.C.S.A. § 4103(c); and

r.  Failing to create, institute, adopt, enforce and comply with policies and procedures concerning the operation of tractor-trailers, including but not limited to safe driving procedures.

149.    The foregoing carelessness and negligence of Defendants, Mariana Salas, MS Trucking a/k/a M. Salas Trucking, and DJM Transport, increased the risk of harm, injuries, death and damages described herein, and were a substantial contributing factor in causing those injuries and damages.

WHEREFORE, all Plaintiffs demand judgment in their favor and against Defendants Salas, MS Trucking, a/k/a M. Sales Trucking, and DJM Transport, LLC in an amount in excess

Case ID: 160500492

of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238,

interest and allowable costs of suit and brings this action to recover the same.

**COUNT EIGHT – PUNITIVE DAMAGES**
**ALL PLAINTIFFS v. VINCENTE ESPINVERA, MARIANA SALAS, MS TRUCKING**
**a/k/a M. SALAS TRUCKING, AND DJM TRANSPORT, LLC.**

150.   All Plaintiffs incorporate by reference all preceding paragraphs, as though fully

set forth here.

151.   The incident, injuries, death and damages described herein were caused by the

recklessness of the Defendants, Espinvera, Salas, MS Trucking a/k/a M. Salas Trucking, and

DJM, individually, jointly and/or severally, by and/or through their agents, workmen, servants

and/or employees in the following particular respects:

a.   Driving recklessly in willful and wanton disregard for the safety of persons, in violation of 75 Pa. C.S.A. § 3736(a);

b.   Recklessly causing the death of another person while failing to comply with the laws of the Commonwealth of Pennsylvania concerning the operation or use of a vehicle or the regulation of traffic, in violation of 75 Pa. C.S.A. § 3732(a);

c.   Recklessly failing to comply with applicable safety standards and recommended safety practices issued by the National Highway Traffic Safety Administration, U.S. Department of Transportation, Federal Motor Carrier Safety Regulations, the Vehicle Equipment Safety Commission, the American National Standards Institute, the Society of Automotive Engineers and other generally recognized standards in violation of 75 Pa.C.S.A. § 4103(c), including those violations set forth above;

d.   Recklessly violating the acts of the General Assembly of the Commonwealth of Pennsylvania concerning the operation of vehicles, including the Pennsylvania Motor Vehicle Code and those set forth above;

e.   Recklessly violating and failing to adhere to applicable statutes, ordinances, rules, regulations and standards governing or relating to the safe operation of vehicles, including those set forth above;  and

f.   Recklessly failing to create, institute, adopt, enforce and comply with safety policies and procedures concerning the operation of tractor-trailers, including but not limited to safe driving procedures.

32

152.     Defendants' acts and/or failures to act under the circumstances of this case were outrageous in that Defendants' conduct amounted to a reckless indifference to the safety of others.

153.     Defendants knew and had reason to know of facts which created a high degree of risk of physical harm and death to another.

154.     Defendants knew and should have known in the exercise of reasonable diligence that the above-cited violations of State and Federal law and regulations, including safety regulations, created conditions that were dangerous and unsafe for those lawfully upon the highway, including the Plaintiffs and Plaintiffs' Decedents.

155.     Despite this knowledge, Defendants willfully, wantonly, deliberately, recklessly, and unlawfully proceeded to act and/or failed to act, as set forth specifically above, in reckless and conscious disregard of or with indifference to the safety and well-being of others, including the Plaintiffs and Plaintiffs' Decedents.

156.     Despite this knowledge, Defendants willfully, wantonly, deliberately, recklessly, and unlawfully proceeded to act and/or failed to act, as set forth specifically above, for business reasons, to reduce Defendants' costs and increase profits, in reckless and conscious disregard of or with indifference to the safety and well-being of others, including the Plaintiffs and Plaintiffs' Decedents.

157.     Defendant Espinvera should not have driven, should not have continued to drive the vehicle, and should have stopped operating the vehicle under the circumstances prior to the time of the accident on May 12, 2014.

158.     The other Defendants permitted their driver to drive their vehicle, should have prevented their driver from operating their vehicle on May 12, 2014, and should have stopped

Case ID: 160500492

their driver from operating their vehicle prior to the time of the accident.

159.   In addition, Defendant Espinvera recklessly failed to slow and failed to stop in a timely manner, knowing that this created a high degree of risk of physical injury and death to another.

160.   Defendants' willful, wanton, deliberate, reckless, and unlawful actions and/or inactions, as set forth above, increased the risk of harm and were substantial factors in causing the injuries and death of Plaintiffs and Plaintiffs' Decedents, as well as damages as set forth more fully above.

161.   Defendants should be appropriately punished with the imposition of punitive damages.  In addition, Defendants and others should be deterred in the future from failing to comply with applicable laws and regulations designed to protect the safety of persons such as Plaintiffs and Plaintiffs' Decedents.

162.   Defendants, Mariana Salas, MS Trucking a/k/a M. Salas Trucking, and DJM Transport, are also vicariously liable for the outrageous, willful, wanton, deliberate, reckless and unlawful conduct of their employee and agent, Defendant, Vincente Espinvera, as set forth herein.

WHEREFORE, all Plaintiffs demand judgment against Defendants, Espinvera, Salas, MS Trucking a/k/a M. Salas Trucking, and DJM Transport in an amount in excess of Fifty Thousand Dollars ($50,000.00) in punitive damages, compensatory damages, delay damages pursuant to Pa.R.C.P. 238, interest and allowable costs of suit and brings this action to recover same.

## COUNT NINE – NEGLIGENCE (DIRECT LIABILITY)
### ALL PLAINTIFFS v. BILL ANSKIS COMPANY, INC., TRAFFIC PLANNING & DESIGN, INC., ALL STATE TRAFFIC CONTROL OF PA, INC., ESTABLISHED TRAFFIC CONTROL, INC., AND TRC COMPANIES, INC., D/B/A TRC ENGINEERS, INC.

34

Case ID: 160500492